IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RONALD WAYNE CADY SR.,            )
     ID #1127356                    )
        Petitioner,                )
vs.                               )       No. 3:07-CV-611-D (BH)
                  )       ECF
NATHANIEL QUARTERMAN, Director,   )       Referred to U.S. Magistrate Judge
Texas Department of Criminal      )
Justice, Correctional Institutions Division, )
        Respondent.                )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a September 19, 2002, conviction for possession with intent to deliver methamphetamine in Cause No. F01-39403-RW.  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B.  Procedural and Factual History

On February 18, 2002, the State indicted petitioner for intentionally and knowingly possessing with intent to deliver more than four grams but less than 200 grams of methamphetamine, enhanced by a prior conviction for aggravated robbery. (Trial Transcript at 2-4).  After he pled not

guilty to the charged offense, on September 17-19, 2002, petitioner was tried before a jury. (Tr.:6-7).

The evidence presented at trial established that four Lancaster Police Department officers responded to a call from the Royal Inn Motel on December 9, 2001, that someone might be operating a methamphetamine lab. (R. 3:50-53). On arriving at the parking lot of the motel, the officers immediately noticed a strong odor. After obtaining the pass keys for two rooms, and after being informed by an employee of the motel that the person who occupied those rooms might be armed and have a police scanner, the officers went to the rooms in question.(R. 3:53-6, 111-12). After noticing mist coming from underneath the door of one of the rooms and seeing through the curtains equipment that was consistent with the manufacture of methamphetamine, the officer knocked on the door and entered after receiving no response. (R. 3:57-8). No one was in the room, but there was a meth lab, and the officers contacted the fire department and the Drug Enforcement Administration. (R. 3:58-63, 94-5, 162-67).

When the officers approached the second room, they noticed two video cameras in the window. Concerned that someone inside might either destroy evidence or attempt to harm them, the officers entered without knocking and with guns drawn. (R. 3:64-8, 115-16). Petitioner and a female friend named Vanessa Bean were inside the room. After petitioner informed the officers that he had two guns in the room, and the loaded guns were retrieved by the officers, petitioner signed a consent to search the room. (R. 3:68-80). On December 10, 2001, petitioner gave a written statement to the police in which he admitted that he was manufacturing and selling or trading methamphetamine from that location. (R. 3:134-45). Samples retrieved from the rooms were tested and determined to be methamphetamine with a total weight of 32.90 grams. (R. 3:86, 154-61).

Petitioner was found guilty and sentenced by the jury to sixty-five years imprisonment. (Tr.:

28-9, 33). On direct appeal, he challenged the trial court's denial of a motion to suppress, admission of certain evidence, and failure to charge the jury on the law of exclusionary evidence. The Fifth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Cady v. State*, No. 05-02-01651-CR (Tex. App.–Dallas, Dec. 31, 2003, pet. ref'd). On December 7, 2005, petitioner filed a state application for writ of habeas corpus in which he raised the same issues as in his federal petition. (State Habeas Transcript [WR-11,894-06] at 2). The Court of Criminal Appeals denied petitioner's state application without written order on the findings of the trial court without a hearing on March 21, 2007. (S.H.Tr.:cover).

On April 3, 2007, petitioner filed his petition for federal habeas relief. (Pet. at 7). Respondent filed an answer on June 21, 2007, (*see* Answer), and provided the state-court records. Petitioner filed a reply brief on September 10, 2007.

## C. Substantive Issues

Petitioner asserts the following claims:

(1) the trial court erred by

-permitting the State to improperly amend the indictment (ground three); and

-admitting evidence obtained by an illegal search and seizure (ground eighteen).

(2) petitioner was denied his right to confront witnesses (ground fourteen);

(3) the State erred by failing to give timely notice of an intent to seek a deadly weapon affirmative finding (ground six);

(4) trial counsel provided ineffective assistance by

-failing to object to the State's improper amendment to the indictment to add a deadly weapon finding or ask for a continuance to prepare for the amendment and

advise petitioner of the ramifications of such a finding (grounds one, two, and five);

-failing to object to incorrect statements made by the prosecutors during voir dire about the law regarding deadly weapon findings (ground one);

-failing to raise as an issue at trial that the evidence was insufficient to support the deadly weapon finding (ground one);

-failing to object to improper jury instructions on parole (ground nine);

-failing to re-urge an objection to jury instructions that did not contain a jury instruction on the exclusionary rule with regard to the warrantless entry (ground ten);

-stating on the record that the defense had no objection to the admission into evidence of petitioner's statement, thereby waiving error and precluding a jury instruction on the exclusionary rule (grounds eleven and sixteen);

-failing to call Vanessa Bean as a defense witness at trial (ground twelve);

-failing to investigate and bring to the trial court's attention the existence of exculpatory evidence in the police report (ground thirteen); and

-failing to inform the jury during punishment that the deadly weapon finding would change the character of the sentence petitioner received (ground fifteen);

(5) appellate counsel provided ineffective assistance by

-failing to raise as an issue on appeal that the evidence is legally insufficient to support the affirmative deadly weapon (ground one);

-failing to raise as an issue on appeal that the trial court erred in permitting the State to improperly amend its indictment to add a deadly weapon finding, that the State erred in not providing proper notice to petition that it would seek such a finding, and that trial counsel was ineffective for failing to object to the improper amendment (grounds four and seven); and

-failing to raise as an issue on appeal that the trial court erred by giving an improper jury instruction on parole law (ground eight);

-failing to raise as an issue on appeal that trial counsel was ineffective for stating that the defense had "no objection" to the admission of

petitioner's statement into evidence (ground eleven);

-failing to raise as an issue on appeal that petitioner was denied his confrontation clause rights (ground fourteen); and

(6) petitioner was denied due process by the cumulative effect of counsels' errors at trial and on appeal (ground seventeen).

## D. Exhaustion

Respondent states that petitioner has exhausted his state court remedies.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's

state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution

of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. TRIAL COURT ERRORS

In his third and eighteenth grounds for relief, petitioner asserts that the trial court erred in permitting the State to improperly amend its indictment against petition and in admitting evidence obtained by an illegal search. In response, respondent asserts that petitioner's third ground is without merit and that petitioner is barred from raising his eighteenth ground for relief on federal habeas review because he had a full and fair opportunity to litigate that claim in the state court.

### A. Amendment of Indictment

In his third ground, petitioner argues that the trial court erred in allowing the State to improperly amend its indictment against him. In particular, petitioner complains that the State's Special Plea stating its intent to seek a deadly weapon finding was in actuality an untimely amendment to the indictment. Under state law, however, the State is not required to plead the use of a deadly weapon in an indictment, because a deadly weapon finding changes the character, rather than the degree of punishment, in that it is a finding which may "detrimentally shade" the character of his custody. *Ex parte Patterson*, 740 S.W.2d 766, 775-76 (Tex. Crim. App. 1987) *overruled on other grounds*, 769 S.W.2d 938 (Tex. Crim. App. 1989). Therefore, under state law, the State may give notice of its intent to seek a deadly weapon by way of a special plea so long as the defendant receives notice of this intent. *Id.* Here, the State filed its notice on September 17, 2002, the first day of voir dire. (Tr.:17) During voir dire, one of the prosecutors spoke to the potential jurors about the State's intent to seek such a finding. (R. 2:26-28).

A criminal defendant has a due process right to notice of the charges against him so that he

can prepare a trial defense. *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994)). To a lesser degree, he also has a due process right to notice of sentencing issues such as an intent to seek a deadly weapon finding. *Id.* at 93-94. The defense received notice of the intent to seek a deadly weapon finding prior to the beginning of trial. Indeed, in an affidavit submitted to the state court, defense counsel Heath Harris states that he informed petitioner when petitioner decided not to accept the State's plea bargain offer that the State would likely seek a deadly weapon finding. (S.H.Tr.:138). Therefore, the defense received the proper notice, was aware prior to the beginning of trial that the finding would be sought, and was able to respond accordingly.

Moreover, even were the special plea considered an indictment amendment, whether the trial court should allow an indictment to be amended and whether the defendant should have additional time to respond to an amended indictment are matters of state law. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) (recognizing that federal guarantee of indictment by a grand jury has not been applied to the states). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). The state habeas court denied this claim on its merits. (S.H.Tr.:cover, 136-37). This denial is not contrary to federal law.

**B.  Search and Seizure**

In his eighteenth ground for relief, petitioner contends that his constitutional rights were

violated when trial court admitted evidence seized from the motel pursuant to an illegal search and seizure. Respondent contends that this ground is barred from federal habeas review.

In *Stone v. Powell*, 428 U.S. 465, 482 (1976), the Supreme Court held that a claim that evidence was admitted into evidence at trial pursuant to an unconstitutional search and seizure cannot be a basis for federal habeas relief if the state provided the opportunity for a full and fair litigation of the Fourth Amendment claim. The Fifth Circuit has stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994); *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987). Here, there was a pre-trial hearing on the issue of whether or not the warrantless search of the motel rooms by police was lawful; witnesses were called and documentary evidence was submitted. (R. 3:4-39). Petitioner has alleged no undeveloped facts relating to his claim that his Fourth Amendment rights were violated because of a warrantless search. Therefore, this issue was fully and fairly litigated at the state level, and petitioner's eighteenth ground for relief is not a basis for federal habeas relief.

## IV. CONFRONTATION CLAUSE

In his fourteenth ground for relief, petitioner asserts that his rights under the confrontation clause of the Sixth Amendment were violated because the front-desk clerk from the Royal Inn did not testify for the State and was therefore not cross-examined by the defense. In particular, petitioner asserts that the police officers testified to hearsay statements made by the clerk at both the suppression hearing and the trial in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). Two Lancaster police officers testified that based on information from a 911 call about someone

possibly operating a methamphetamine lab at the motel, they reported to the motel and were informed by an employee of the motel that the person suspected of operating a meth lab might be armed and in possession of a police scanner. (R. 3:52, 55-6, 110).

Under the confrontation clause of the Sixth Amendment, the accused in a criminal prosecution has the right to be confronted with the witnesses against him. U.S. CONST. amend VI. However, the Confrontation Clause does not preclude the admission of *any* hearsay testimony. Instead, the Supreme Court held in *Crawford* that the Confrontation Clause prohibits the admission into evidence of out-of-court testimonial statements such as statements given to a police officer offered for the truth of the matter asserted, unless the witness is unavailable and there was a prior opportunity to cross-examine the witness. *Id.* at 68-69. Other non-testimonial hearsay, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006), *citing Crawford v. Washington*, 541 U.S. 36, 51 (2004). The Supreme Court in *Davis* further explained that:

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. In the instant case, the information provided by the desk clerk was not offered for the truth of the matter asserted in that it was not offered to *prove* that petitioner was operating a meth lab or had guns or had a police scanner. It was instead offered as the information the police relied upon in reporting to the motel, acquiring the pass keys to the rooms, and, in part, entering the rooms. This information was therefore not hearsay testimony. Even if it were, however,

it was not a violation of the Confrontation Clause to admit it into evidence because the purpose of the information given by the clerk was to enable the police to meet an ongoing emergency, and it was therefore not testimonial in nature.

Moreover, even if admission of the testimony was error, it is subject to a harmless error analysis on federal habeas review. Petitioner has not established that any error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Guidry v. Dretke*, 397 F.3d 306, 330-31 (5th Cir 2005) (applying *Brecht* to a *Crawford* violation). There was testimony given by the police officers that petitioner was apprehended in possession of two loaded guns, and petitioner admitted in his own testimony at trial that he operated a meth lab and was in possession of the drugs found in the rooms. (R. 3:71, 93; R. 4:15-17). Any hearsay testimony regarding what the desk clerk said to the police officers therefore did not have a substantial effect or influence on the jury's verdict. This claim was denied on its merits at the state level. (S.H.Tr.:cover). This decision is not contrary to federal law.

## V. PROSECUTORIAL ERROR

In his sixth ground for relief, petitioner asserts that the State erred by failing to give timely notice of its intent to seek a deadly weapon finding. As noted earlier, the State gave timely notice of its intent to seek a deadly weapon finding under prevailing State law. Accordingly, the prosecution did not err in this respect. The state habeas court denied this claim on its merits (S.H.Tr.:cover, 134-37), and this decision is not contrary to federal law.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first, second, fifth, ninth through thirteenth, fifteenth and sixteenth grounds for relief, petitioner asserts that his trial counsel provided ineffective assistance of counsel in several respects

11

with regard to the deadly weapon finding that was made by the jury at petitioner's trial, in failing to object to an improper jury instruction on parole, by failing to re-urge an objection to jury instructions that did not contain a jury instruction on the exclusionary rule with regard to the warrantless entry, and by stating on the record that the defense had no objection to the admission into evidence of petitioner's statement, thereby waiving error and precluding a jury instruction on the exclusionary rule. Petitioner further argues that trial counsel was ineffective for failing to call Vanessa Bean as a defense witness at trial and for failing to investigate and bring to the trial court's attention the existence of exculpatory evidence in the police report.

## A. Applicable Law

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams*

*v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

## B. Deadly Weapon Finding

Petitioner asserts that his trial counsel was ineffective by 1) failing to object to the State's improper amendment to the indictment to add a deadly weapon finding or ask for a continuance to prepare for the amendment and advise petitioner of the ramifications of such a finding (grounds one, two, and five); 2) failing to object to incorrect statements made by the prosecutors during voir dire about the law regarding deadly weapon findings (ground one); 3) failing to raise as an issue at trial that the evidence was insufficient to support the deadly weapon finding (ground one); and 4) failing to inform the jury during punishment that the deadly weapon finding would change the character of the sentence petitioner received (ground fifteen).

In an affidavit submitted at the state habeas level, defense attorney Heath Harris states that the State provided adequate notice of its intent to seek an affirmative finding of a deadly weapon. Harris also states that he specifically discussed the ramifications of this with petitioner, but petitioner refused to accept the State's offer of a twenty-five year sentence even after Harris informed him that the State would likely seek such a finding were he to go to trial. (S.H.Tr.:138). The state habeas court found Mr. Harris to be a trustworthy individual and the statements in his affidavit worthy of belief, true, correct, and dispositive. (S.H.Tr.:135). The state habeas court found that petitioner was represented by an attorney "who exercised all of the skill and expertise which one could reasonably of an attorney" and that petitioner was not denied his right to effective assistance of trial counsel. (S.H.Tr.:135). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. (S.H.Tr.:cover, 134-37). This denial is not an unreasonable application of the *Strickland* standard.

13

First, as noted earlier, the State did not improperly amend its indictment against petitioner, and the defense received appropriate notice of the State's intent to seek a deadly weapon finding. Further, the state court found Harris' statement that he informed petitioner of the ramifications of the State seeking a deadly weapon to be true, and the state habeas court's findings are entitled to a presumption of correctness under AEDPA that petitioner has failed to rebut. Accordingly, the record before this Court is that petitioner was informed, when he declined to accept the State's plea bargain offer, that the State would likely seek an a deadly weapon and that this would increase the amount of time he would have to serve before being eligible for parole. (S.H.Tr.:138). Trial counsel was not ineffective in this regard.

Regarding petitioner's claim that counsel was ineffective for failing to correct statements made by the prosecutor during voir dire about deadly weapon finding, during voir dire, one of the prosecutors explained to the potential jurors that using a deadly weapon includes simple possession of a firearm if the possession facilitates the associated felony. Examples of possession of a deadly weapon that facilitates a felony were then given by the jurors themselves and included such things as possession of a weapon being used to protect an investment, to threaten or intimidate others, or to give power to the possessor. (R. 2:27-29). These are not incorrect statements of state law. *See Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (noting that one can "use" a deadly weapon without exhibiting it, such as when it is possessed by a drug dealer to protect the drug supply and cash). Moreover, to the extent that petitioner is complaining that these particular examples did not apply to *him*, the record reflects that these were used as mere examples, and the prosecutor did not represent that any of these examples applied. The failure to make meritless objections does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Counsel was

14

not ineffective for failing to object to the statements made by the prosecutor during voir dire.

Petitioner next contends that trial counsel was ineffective for failing to raise as an issue at trial the insufficiency of the evidence to support the deadly weapon finding. Sufficiency of the evidence to support a conviction is typically an issue raised on appeal, and this Court construes petitioner's claim as an allegation that trial counsel should have sought a judgment notwithstanding the verdict or a new trial on grounds that the evidence was insufficient to support the deadly weapon finding. Under state law, a jury may find that a defendant used a deadly weapon in commission of an offense, even if he merely possessed it, as long as the possession aided the offense. *Patterson v. State*, 769 S.W.2d at 941. As noted by respondent, petitioner explained during his testimony that he kept loaded guns with him in the room because the drug business is a dangerous business, and it is not uncommon for someone in that business to keep them handy in case they are needed. (R. 4:43-44). Likewise, a special agent with the DEA testified at trial that firearms can aid in the possession with intent to deliver a controlled substance to protect a person's investment. (R. 3:177). There was therefore sufficient evidence to support a finding that the deadly weapons petitioner possessed aided in the commission of the offense, and trial counsel was not ineffective for failing to raise this as an issue.

Petitioner also alleges that his trial counsel was ineffective for failing to inform the jury during punishment that the deadly weapon finding would change the character of the sentence petitioner received. Trial counsel explains in his affidavit that he made the strategic decision not to tell the jury that because of the deadly weapon finding petitioner would ineligible for parole for a longer period of time; he did not want the jury to have this information and therefore focus on giving petitioner a longer sentence. (S.H.Tr.:139). The Fifth Circuit has held that if counsel has made an

15

adequate investigation, any conscious and informed decision made based on trial tactics and strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *cert. denied*, 540 U.S. 11865 (2004), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Petitioner has not shown that counsel's decision was so poorly chosen that it permeated his trial with unfairness.

Neither the defense nor the State made reference to petitioner's parole eligibility during the punishment phase of the trial. Defense counsel argued in closing statements that petitioner should receive a fifteen year sentence, the minimum available for him, because it was an ample amount of time to spend in prison and would give petitioner time to become rehabilitated and seek drug treatment. (R. 4:103-06). Counsel made this argument without acknowledging parole law, and petitioner has not shown that this decision caused his trial to be permeated with unfairness. Moreover, given petitioner's extensive criminal history, which was admitted into evidence by the State, and included two DWIs, three thefts, three aggravated robberies with a deadly weapon, two possessions of amphetamine, and one conviction for unlawfully carrying a weapon (R. 4:46-50), petitioner has not shown a reasonable probability that had the jury known about his parole eligibility, he would have received a *lesser* sentence. Counsel was not ineffective in this regard.

## C. Jury Instructions

Petitioner further asserts that counsel was ineffective for failing to object to improper jury instructions on parole (ground nine) and to re-urge an objection to jury instructions that did not contain an instruction on the exclusionary rule with regard to the warrantless entry by the police

16

into the motel rooms (ground ten).

At the punishment phase of petitioner's trial, the jury was received the following instruction regarding parole:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles of the State of Texas and are no concern of yours.

(Tr.:32). As respondent acknowledges, this was not the instruction that should have been given to the jury. Because the jury made an affirmative finding that petitioner had used or exhibited a deadly weapon (Tr.:29), the jury should have instead been instructed, pursuant to Article 37.07 § 4(a) of the Texas Code of Criminal Procedure, in a general manner about parole law and good conduct time; they should also have been instructed that petitioner would have to serve one-half of his sentence, or thirty years, whichever is less, before being eligible for parole. TEX CODE CRIM. APP. ANN. art. 37.07 § 4(a) (Vernon 2001).

In his affidavit, defense counsel Harris states that he agreed to the jury instruction on parole law based on trial strategy and because it was not an improper instruction. He further states that he did not want to give the jury parole information because he did not want the jury focusing on a higher sentence in order to ensure that petitioner served a larger amount of years. (S.H.Tr.:138-39). As noted earlier, the Fifth Circuit has held that any conscious and informed decision made by counsel based on trial tactics and strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it renders the entire trial obviously unfair. *United States v. Cotton*, 343 F.3d at 753; *Smith v. Cockrell*, 311 F.3d at 668.

17

Petitioner has not shown that counsel's decision was so poorly chosen that it rendered his trial unfair. Instead, Texas courts have recognized that the 37.07 § 4(a) jury instruction is designed to benefit that State, not the defendant, as it was designed to increase sentences given by juries because it informs a jury how long a term defendant would serve in prison before being eligible for parole. *See Arnold v. State*, 786 S.W.2d 295, 298-300 (Tex. Crim. App. 1990); *Grigsby v. State*, 833 S.W.2d 573, 576 (Tex. App.–Dallas 1992, pet. ref'd). Given trial counsel's concern that the jury would focus on a higher sentence if the jurors knew when petitioner would be eligible for parole, counsel's trial strategy of not objecting to the given instruction was not poorly chosen. Instead, neither the prosecution nor the defense referred to parole during closing statements at punishment, and the jury was instructed not to consider it in their deliberations.

Moreover, petitioner has failed to show prejudice because he has failed to establish a reasonable probability that had the jury been informed about his parole eligibility, he would have received a lesser sentence. Due to the enhancement paragraph contained in petitioner's indictment, to which petitioner pled true (R. 4:96), petitioner could have been sentenced from fifteen to ninety-nine years or life. (Tr.:31). Defense counsel argued at closing that petitioner should receive a minimum sentence because of his cooperation with the police and his history of drug use. (R. 4:102-06). The State argued that petitioner should received a life sentence based on his criminal history and because he placed others in immediate danger in operating a dangerous meth lab in the middle of a motel. (R. 4:107-15). He received a sixty-five year sentence. As noted earlier, during the cross-examination of petitioner, the State also presented evidence of petitioner's extensive criminal history. (R. 4:46-50). Given petitioner's lengthy criminal history, and the facts of the instant case, petitioner has not shown a reasonable probability that he would have received a lesser sentence had

the jury known of his parole eligibility. *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (holding that when a petitioner challenges counsel's actions during the punishment phase, there must be a reasonable probability that the petitioner's non-capital sentence would have been significantly less harsh but for counsel's alleged errors in order for relief to be warranted). Here, even after hearing about petitioner's criminal history, he was given a mid-range sentence. This ground was denied on its merits at the state level. (S.H.Tr.:cover). This is not an unreasonable application of the *Strickland* standard.

With regard to a jury instruction on the constitutionality of the search of the motel rooms, Harris explains in his affidavit that he did request a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure which would have made the issue of whether the search of the motel rooms was legal, and therefore whether the items seized should be considered admissible evidence, a jury issue, but this request was denied. (S.H.Tr.:138); *see* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). The record of the trial reflects that this objection was made (R. 4:77-78). Petitioner has not shown that a re-urging of this objection would have yielded any more favorable results than the first objection. The failure to make meritless objections does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). This ground was also denied on its merits at the state level. (S.H.Tr.:cover). This is not an unreasonable application of the *Strickland* standard.

## D.  Failure to Object

Petitioner next contends that trial counsel was ineffective for stating on the record that the defense had no objection to the admission into evidence of petitioner's statement, which thereby waived error and precluded a jury instruction on the exclusionary rule (grounds eleven and sixteen).

In particular, petitioner asserts that because he testified at trial that he was told that if he did not give a statement to the police, his girlfriend Vanessa Bean would receive as much time as he did (R. 4:15), the voluntariness of the statement was at issue. *See Colorado v. Connelly*, 479 U.S. 157, 163-5 (1986) (holding that coercive police activity can render a confession involuntary). Accordingly, petitioner contends that trial counsel was ineffective for stating on the record that the defense had no objection to the admission of the statement.

Before petitioner's trial began, a pre-trial hearing was conducted on the defense's motions to suppress the items seized from the motel rooms and petitioner's statement. After hearing evidence, the trial court denied these motions. (R. 3:46-47). In his affidavit submitted at the state level, trial counsel Harris states that, after the motion to suppress petitioner's written statement was denied, he did not object to the admission of the statement into evidence based on trial strategy. He wanted to show the jury that petitioner cooperated fully with the police and hoped that this would mitigate petitioner's punishment. (S.H.Tr.:138).

As noted earlier, if counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *cert. denied*, 540 U.S. 11865 (2004), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Petitioner has not shown that counsel's decision was so poorly chosen that it permeated his trial with unfairness.

After the trial court determined that the warrantless search of the motel rooms was constitutional and petitioner's written statement was admissible, the evidence presented at trial by

the State included evidence that petitioner was arrested in a motel room with methamphetamine; items used to sell drugs, such as drug capsules; numerous cell phones; jewelry; car titles; and other merchandise. Furthermore, two video cameras were in use. (R. 3:65, 86-90) Petitioner was naked and inside of the bathroom when the police entered (R. 3:71), indicating that he was staying in the room. The motel room located across the breezeway from this room, and rented by the same person, was identified as a methamphetamine lab by police officers. Finally, in his statement, petitioner acknowledged that he was the operator of the lab. (R. 3:143-44). Given all of this evidence that supported his guilt, trial counsel's strategy of emphasizing petitioner's cooperation with the police did not render petitioner's trial unfair.

Moreover, even if trial counsel had objected to the admission of the statement and preserved error and/or requested and been granted a jury instruction making the constitutionality of petitioner's statement an issue for the jury, petitioner has not shown a reasonable probability that he would not have been convicted or his conviction would have been overturned had his statement been excluded. Even without petitioner's statement, the State presented substantial evidence of the existence of a meth lab and petitioner's presence at the scene, where methamphetamine was found, in possession of two loaded guns. (R. 3:93). During his own testimony at trial, petitioner admitted that he manufactured drugs in the motel and traded them for most of the items found in the room. (R. 4:17). The evidence is sufficient to support petitioner's conviction even without consideration of his statement. These grounds were overruled on their merits at the state level (S.H.Tr.:cover), and this decision is not an unreasonable application of the *Strickland* standard.

### E.  Failure to Call Witness

Petitioner further contends that trial counsel was ineffective for failing to call Vanessa Bean

as a defense witness at trial (ground twelve).  Specifically, petitioner asserts that had Bean been called as a witness, she could have testified that petitioner was coerced into signing the written statement so that Bean would not be prosecuted.

At trial, petitioner testified that Bean was present when he signed his written statement and that he was coerced into signing the statement because he loved her and was told by the police officer that if he did not give a statement, she would also be charged with manufacturing methamphetamine and would serve as much time as petitioner did. (R. 4:15-6).  In his affidavit submitted at the state level, trial counsel Harris states that he did not call Vanessa Bean as a witness because he believed that she would be more willing to assist the State and ensure that no charges were filed against her rather that incriminate herself in an attempt to assist petitioner. (S.H.Tr.:139).

Again, trial counsel's decision did not permeate petitioner's trial with unfairness.  While petitioner has submitted an affidavit from Beam stating that she was willing to testify on petitioner's behalf at trial on this subject (Pet. Ex. H), counsel's belief was that at the time of the trial, she would have been more concerned that no charges were filed against her.  Moreover, petitioner has failed to establish prejudice.  As noted earlier, even if petitioner's written statement had been suppressed, there was substantial evidence of petitioner's guilt, including the fact that he was caught living in a motel room containing drugs and paraphernalia used to sell and use drugs.  Petitioner admitted in his own testimony at trial that he manufactured and sold drugs from that location.  The state habeas court denied this claim on its merits (S.H.Tr.:cover), and this decision is not an unreasonable application of the *Strickland* standard.

## F.  Exculpatory Evidence

Petitioner next contends that his trial counsel was ineffective for failing to investigate and

bring to the trial court's attention the existence of exculpatory evidence in the police report (ground thirteen). Specifically, petitioner contends that the police report included a statement that one police officer conducted surveillance on both motel rooms while the other officers entered the rooms. Petitioner contends that this is evidence that the police officers did have the time and opportunity to obtain a search warrant before entering the rooms because this officer could have ensured that no evidence was destroyed while a search warrant was obtained.

Harris states in his affidavit that there was no exculpatory evidence contained in the police report in his opinion, as the officers testified that they smelled an odor consistent with a methamphetamine lab and acted immediately to protect the public and preserve evidence. (S.H.Tr.:139). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. (S.H.Tr.:cover). This is not an unreasonable application of the *Strickland* standard.

Petitioner has presented no evidence that trial counsel was unaware of this police report and/or failed to investigate its contents. Without any support for his allegations, habeas relief is unwarranted. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations do not raise a constitutional issue in federal habeas proceeding). Indeed, during cross-examination by defense counsel at the suppression hearing, one of the police officers acknowledged that after discovering the existence of a meth lab and contacting the fire department to address the immediate danger, they had time and could have obtained a search warrant but did not do so because they did not believe it was practical. (R. 3:19-20). Counsel then argued in closing at the hearing that there were not exigent circumstances that warranted a warrantless search because the officers could have obtained a search warrant based on the smell alone, but chose not to do so. (R. 3:45-6). The defense

23

motion to suppress the evidence was denied. (R. 3:47). Petitioner has not shown that counsel was ineffective in his representation with respect to the warrantless search issue.

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner further asserts that his appellate counsel was ineffective in several respects. In particular, petitioner argues that appellate counsel was ineffective for failing to raise as issues on appeal 1) that the evidence is insufficient to support the deadly weapon finding; 2) several claims regarding the deadly weapon findings; 3) that the trial court erred by giving an improper jury instruction on parole law; 4) that trial counsel was ineffective for stating that he had no objection to the admission of petitioner's written statement into evidence; and 5) that petitioner was denied his confrontation clause rights.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether counsel has been ineffective is determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). In the context of appeals, the Constitution does not require an appellate attorney to advance every conceivable argument, and it can be effective assistance of counsel on appeal to focus on a few key issues. *Evitts v. Lucey*, 469 U.S. at 394; *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 920 F.2d 251 (5th Cir. 1990). Under *Strickland*, Petitioner must show a reasonable probability that, but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

With regard to petitioner's assertions of ineffective assistance of appellate counsel, this Court has already determined that the trial court did not err in allowing the State to seek a deadly weapon finding, that the State did not fail to provide notice of its intent to seek such a findings, that trial

counsel was not ineffective for failing to object to the State's notice of intent to seek such a finding, that any error with regard to the jury instruction on parole law was harmless, that trial counsel was not ineffective for failing to object to the admission of petitioner's statement into evidence, that petitioner's confrontation clause rights were not violated, and that the evidence is sufficient to support the deadly weapon finding. Accordingly, appellate counsel was not ineffective for failing to raise these as points of error on appeal. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal). The state habeas court found that petitioner was not denied effective assistance of counsel on appeal, and the Court of Criminal Appeals denied these claims based on the trial court's findings. (S.H.Tr.:cover, 135). This denial is not an unreasonable application of the *Strickland* standard.

## VIII. CUMULATIVE EFFECT OF INEFFECTIVE ASSISTANCE OF COUNSEL

In his seventeenth ground for relief, petitioner contends that his constitutional rights were violated by the cumulative effect of trial and appellate counsel's errors. In *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), the Fifth Circuit held that in order for a federal habeas petitioner to prevail on a claim of cumulative error at a state trial, he must establish that 1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; 2) the errors were not procedurally defaulted for habeas purposes; and 3) the constitutional errors so infected the entire trial that the resulting conviction violates due process. *Id.* at 1458. As this Court has found, the ineffective assistance of counsel claims raised by petitioner are without merit and therefore do not establish any constitutional errors which infected the trial such that his conviction and sentence violate his due process rights.

## IX. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims in his state writ. The Court of Criminal Appeals denied the state writ on its merits, and thus petitioner's claims were adjudicated on the merits. The decision at the state level is consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## X. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## XI. RECOMMENDATION

The Court should **DENY** the request for habeas corpus relief under 28 U.S.C. § 2254 with prejudice.

**SIGNED on this 5th day of March, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE